**Robert ZIEGELMAIR, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 01–97–01376–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

July 8, 1999.

Rehearing Overruled Aug. 26, 1999.

port per month ordered by the court varies from the amount calculated pursuant to the guidelines.

Stephen J. Schechter, Stephen J. Schechter, P.C., Christopher Michael Villasana, Houston, for Appellant.

Michael J. Guarino, Criminal Dist. Atty., B. Warren Goodson, Jr., Assistant Criminal District Attorney, Galveston, for the State.

Panel consists of Justices WILSON, TAFT, and NUCHIA.

## OPINION

TIM TAFT, Justice.

A jury found appellant, Robert Ziegelmair, guilty of cruelty to animals. The court then sentenced appellant to one year in jail, suspended for one year of community supervision, and a $100 fine. We address whether the trial court erred by: (1) denying appellant's motion to recuse; (2) denying appellant's motion to quash the warrant for appellant's arrest; (3) admitting photographs of wounds on appellant's dog; and (4) admitting the testimony of veterinarians who examined appellant's

dog prior to the issuance of a warrant for its seizure. We affirm.

## Facts

League City Animal Control received a call asking that someone come to pick up a dog that had wandered onto the caller's property. Officer Robinson was dispatched to pick up the dog, a Labrador retriever named "Jake."[1] The address to which Robinson was dispatched was not appellant's address.

Upon arrival, Robinson noticed Jake appeared thin and dirty. Robinson also observed a severe laceration on Jake's neck where his skin had grown through his collar's buckle. A pungent odor came from the wound on Jake's neck. Robinson notified his supervisor, Officer Pierce, of Jake's condition. Pierce instructed Robinson to take Jake to the League City Police Station.

At the station, Pierce noticed that Jake's neck had grown around his collar, to the extent that his collar was barely visible. Pierce also noticed excessive blood, puss, and a pungent smell coming from the wound caused by the embedded collar. To relieve the pressure on Jake's neck, the officers tried to cut off Jake's collar. However, the collar's buckle was so embedded in Jake's skin that they were only able to cut off a portion of the collar. Using the information printed on Jake's tags, the officers attempted to contact appellant, but they were unsuccessful.

Pierce instructed Robinson to take Jake to a veterinarian clinic immediately, to have his collar removed and to have the veterinarian evaluate Jake's medical condition. The veterinarians surgically removed Jake's collar, and treated an approximately one-inch gash where Jake's neck had grown into the collar. This condition was caused by the 14–inch collar that was left on Jake's 18–inch neck.

1. Robinson picked up two dogs; appellant was charged with cruelty to both. However, because appellant was only convicted of cruelty to Jake, we will confine our analysis and statement of the facts to Jake.

### Admissibility of Veterinarians' Testimony

In his fourth point of error, appellant complains that the trial court erred by not excluding testimony from the veterinarians who exa: nined Jake. Appellant contends League City animal control officers seized Jake without a warrant when they took Jake to be examined. Appellant argues that the veterinarians' examination was performed on Jake without a warrant, and therefore the trial court should have excluded their testimony. Appellant's objection was proper and timely.

#### A. Seizure

 The Galveston County Health District's Rules for Animal Control provide that if a dog is found trespassing or running at large upon any private property, any person may "take up" the dog and deliver it to the regulatory authority. GALVESTON COUNTY, TEX., R. FOR ANIMAL CONTROL .015(c). Once the regulatory authority has possession of the dog, it shall hold and dispose of the dog as though it had been found running at large and impounded. GALVESTON COUNTY, TEX., R. FOR ANIMAL CONTROL .015(d). These provisions expressly authorized Jake's seizure by the private citizen who turned Jake over to the League City Animal Control Department, the regulatory authority. Therefore, Officer Robinson's warrantless seizure of Jake was lawful.

#### B. Treatment

When a dog is impounded and the dog is found to be diseased, sick, injured, or otherwise unhealthy, animal control officers are authorized to dispose of such a dog immediately. GALVESTON COUNTY, TEX., R. FOR ANIMAL CONTROL .023(b). This provision implicitly gives animal control officers authority to have an impounded dog medically evaluated, to determine whether it is diseased, sick, injured, or otherwise unhealthy. Based upon the animal control department's authority to have dogs medically evaluated, we conclude that Officer Robinson's warrantless transporting of Jake to the veterinarian clinic and the veterinarian's examination of Jake was authorized. Accordingly, the trial court did not err in admitting the veterinarians' testimony regarding their examination of Jake.

We overrule appellant's fourth point of error.

The discussion of the remaining points of error does not meet the criteria for publication, and is thus ordered not published. TEX.R.APP. P. 47.4. We affirm the judgment of the trial court.